## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

ROSA EVELIA CASTILLO PACHECO
21036 Little Girls Way
Lexington Park, Maryland 20653

     *Plaintiff,*

   v.

MEZEH-ST. MARY'S LLC
3975 Fair Ridge Drive, Suite N310
Fairfax, Virginia 22033

SERVE: Saleh Mohamadi
       7804 Devereux Manor Court
       Fairfax Station, Virginia 22039-0000

MEZEH, INC.
7804 Devereux Manor Court
Fairfax Station, Virginia 22039-0000

SERVE: Saleh Mohamadi
       7804 Devereux Manor Court
       Fairfax Station, Virginia 22039-0000

SALEH MOHAMADI
7804 Devereux Manor Court
Fairfax Station, Virginia 22039-0000

SANDRA LOPEZ
408 Brenner Street
Capitol Heights, MD 20743

     *Defendants.*

Civil Action No.: 21-2521

## COMPLAINT

    Plaintiff, Rosa Evelia Castillo Pacheco ("Plaintiff" or "Plaintiff Pacheco") brings this action

against Defendants, Mezeh-Saint Mary's LLC ("Mezeh-St. Mary's"), Mezeh, Inc., Saleh

Mohamadi, its owner ("Mohamadi"), and Sandra Lopez ("Lopez") (collectively the "Defendants"),

for violations of Plaintiff's rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Families First Coronavirus Response Act ("FFCRA"), 29 U.S.C. 2601, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. §§ 3-415 and 3-427, and the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., §§ 3-505 and 3-507.2.

In support, Plaintiff alleges as follows:

## THE PARTIES

1. Plaintiff is an adult resident of St. Mary's County, Maryland and was employed by Defendants from July 2020 to July 26, 2021, when she was terminated. At all times relevant to the Complaint, Plaintiff was employed at Defendant's restaurant located at 45000 Saint Andrews Church Road, Suite A, Building 5, California, Maryland 20619 (hereinafter "Meza St. Mary's Restaurant").

2. Mezeh-St. Mary's LLC is a limited liability company ("LLC") organized under the laws of the Commonwealth of Virginia which, as part of a 42-restaurant chain, operates a Meza St. Mary's Restaurant". Mezeh-St. Mary's Restaurant was opened in or around July 2020. It is one of 42 restaurants operating under the large Mehez umbrella. The Mezeh restaurants are located primarily in Maryland and Virginia but also in New York, New Jersey and North Carolina. There are at least 12 Mezeh restaurant locations in Maryland. Each of the 42 Mezeh restaurants is organized as a separate LLC under the laws of the Commonwealth of Virginia, but each remains under the common ownership and control of Mohamadi, Tai Chiao, and Mezeh, Inc. (which is owned and controlled by Mohamadi and Chiao). Hereinafter Mezeh, Inc. and the 42 Mezeh LLCs shall be referred to as "the Mezeh Enterprise".

3.      Mezeh-St. Mary's LLC was Plaintiff's "employer" as that term is defined within the FLSA, MWHL and MWPCL, because, through its agents, owners, officers and/or members (and by and through the Mezeh Enterprise), it employed the Plaintiff directly, hired her, set her rate of pay, set the terms and conditions of her employment, set her schedule, directed her in the performance of her work, maintained employment records for Plaintiff, terminated her, and paid her wages.

4.      Mohamadi is an owner, officer, and/or member of Mezeh-St. Mary's LLC, he owns, operates, controls and manages all 42 of the Mezeh restaurant LLCs along with Mezeh, Inc. and the Mezeh Enterprise, including the 12 restaurants operating in Maryland. Mohamadi personally visits the Mezeh restaurants in Maryland and, through his agents, employees, servants and the Mezeh Enterprise, he regularly and frequently conducts business in Maryland.

5.      Mohamadi is an employer of Plaintiff within the meaning of the FLSA, MWHL and the MWPCL because he is an owner, officer, and/or member of Mezeh-St. Mary's LLC, who is significantly involved in Mezeh's business operations. Specifically, (1) he is responsible for creating and enforcing, through lower-level managers such as Lopez, Mezeh St. Mary's LLC's policies and procedures governing employee pay compensation and benefits, (2) he controls the corporate funds which were used to pay Plaintiff and could and did allocate funds as profits, (3) he set and approved the hourly rate for Plaintiff and other employees in Plaintiff's position and acted with knowledge of or approved the unlawful pay practices of paying straight time wages for overtime hours, (4) he had authority to hire, fire and discipline Plaintiff, (5) he made or approved the decision to engage in the illegal pay practices that are the subject of this law suit in order to make Mezeh St. Mary's LLC and the Mezeh Enterprise more profitable, (6) he was aware of and

approved the fraudulent payroll practices which violated the FLSA, the MWHL and the MWPCL and (7) he maintained Plaintiff's employment records.

6.      Lopez was, at all relevant times, a manager who, among other duties managed and oversaw Mezeh-St. Mary's Restaurant along with some of the other 42 restaurants (and the 42 Mezeh LLCs) that were part of the Mezeh Enterprise. She typically visited Mezeh-St. Mary's once or twice per month. However, Plaintiff spoke to Lopez frequently by calling her and speaking to her on Lopez's cell phone.

7.      On information and belief, at all relevant times, Lopez was jointly employed by Mezeh, Inc. and Mezeh St. Mary's LLC and the actions she took were for and on behalf of both of those entities. Lopez is an employer of Plaintiff within the meaning of the FLSA MWHL and the MWPCL because: (1) she managed and oversaw Mezeh-St. Mary's Restaurant, had functional and operational control over the business, and was significantly involved in its day-to-day affairs; (2) she exercised control over the terms and conditions of Plaintiff's employment, including setting hiring Plaintiff, setting Plaintiff's schedule, directing Plaintiff in the performance of her work and setting her rate and manner and method of pay; (3) she had authority to discipline the Plaintiff and she did in fact hire Plaintiff and she authorized Plaintiff's termination; (4) she was in charge of approving Plaintiff's sick and paid time off ("PTO") and creating her work schedule; (5) she suffered or permitted Plaintiff to work overtime and she created fraudulent payroll records to conceal the fact that Plaintiff was working overtime without being paid an overtime premium; (6) she made the decision to violate the FLSA and MWHL by failing to pay Plaintiff an overtime premium for her overtime work; and (7) she maintained employment records for Plaintiff.

8.      Mezeh, Inc. is a corporation organized and incorporated in the Commonwealth of Virginia. Mezeh, Inc., which owns and/or controls Mezeh St. Mary's. Additionally, Tai Chiao is

the President of Mezeh, Inc. and Mohamadi is an Officer, Director and owner of Mezeh, Inc. Mezeh, Inc. was a joint employer of Plaintiff for the following reasons: (1) Lopez and Mohamadi are agents of Mezeh, Inc.; (2) Lopez was Plaintiff's employer and she took the unlawful actions that are the subject of this law suit (*see* ¶ 4 above); (3) Mohamadi was also Plaintiff's employer and through lower-level managers and agents, he formulated and/or approved the unlawful pay policies that are the subject of this law suit.

9.      The Mezeh Enterprise constitutes a single "Enterprise" within the meaning of 29 U.S.C. § 203 (r)(1), as all 42 restaurant LLCs perform related activities through unified operations and under the common control of Mohamadi and Chiao for a common business purpose. In fact, the 42 restaurants rely on centralized advertising and all of them utilize a single website from which customers can order food from any of the 42 restaurants.

10.      At all times relevant to this Complaint, the Mezeh Enterprise was an "Enterprise Engaged in Commerce" within the meaning of 29 U.S.C. § 203 (s)(1), as Mezeh-St. Mary's LLC, either alone, or collectively with one or more of the 42 other Mezeh restaurant LLCs had: (1) employees engaged in commerce or the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

## JURISDICTION

11.      The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under § 1331 because Plaintiff's claims involve federal questions and the Court has pendant jurisdiction over the Plaintiff's state law claim under 28 U.S.C. § 1367.

5

12.     This Court has *in personam* jurisdiction over Defendants because they conduct business in the State of Maryland and because all of the events giving rise to these claims occurred in Maryland.

## STATEMENT OF FACTS

13.     While employed by Defendants, Plaintiff's duties included, but were not limited to, prepping and cooking food, washing dishes and serving food to customers.

14.      Initially, Lopez served as Plaintiff's first line supervisor. After about one or two months, Elmer Quintanila became Plaintiff's first line supervisor. His title was manager and he was present in the restaurant nearly every day except on his days off. However, Lopez was in the restaurant only once or twice per month, but could be reached by Plaintiff on her cell phone.

15.     Plaintiff was hired in or around July 2020 shortly after Mezeh-St. Mary's restaurant opened. Plaintiff was hired by Lopez who set Plaintiff's pay rate and promised to pay her $13.00 per hour. Lopez informed Plaintiff that she would be paid on a biweekly basis by check. When Plaintiff began her employment, Lopez showed Plaintiff how to clock in and clock out using a computer within the cash register. However, Lopez explained that Plaintiff was required to clock out once she reached 8 hours of work in one day and 40 hours of work in a week. Lopez directed Plaintiff to keep track of her additional hours on a separate paper and that she would be paid for that time in cash. During her first month of employment, Plaintiff worked seven days per week and anywhere from 65 to 75 hours per week and sometimes more. However, during this period of time, Plaintiff did not receive payment for all hours of work and she received none of the cash payments Lopez promised.

16.     After the first month, Plaintiff began working six days per week on a regular basis and generally worked 70 to 80 hours per week.

17.     After July 4, 2021, Defendants reduced her work hours and she worked fewer than six days per week, but continued to work overtime hours.

18.     During her employment with Defendants, Plaintiff had no breaks except for an occasional 30-minute lunch break if time permitted. If Plaintiff took a lunch break, she clocked out for the lunch break.

19.     During her employment with Defendants, Plaintiff never once received an overtime premium (1.5 times her regular hourly rate) for any overtime hours that she worked in a work week. In addition, throughout her employment, Defendants failed to pay the Plaintiff anything at all for many of her work hours.

20.     After receiving her first bi-weekly pay check and pay stub, Plaintiff noticed she was not being paid anything at all for some of her work hours. Plaintiff complained to Lopez, who informed her that it was Mezeh's policy not to record overtime hours and not to pay anything for them. Lopez told Plaintiff and that if she (Plaintiff) wanted to be paid for the extra hours, she could record them on a separate piece of paper and Mezeh would pay for them separately with cash outside of the formal payroll system. Lopez promised Plaintiff that Defendants would pay Plaintiff for the unpaid hours during the first few pay periods, but Defendants never did.

21.     Later on, but within the first month of Plaintiff's employment, Lopez told Plaintiff that if she wanted to be paid for the overtime hours (albeit at straight time rates), she would need to use two different names and receive some of her pay under one name and some of her pay under the second name. And as part of the plan, Lopez told Plaintiff to clock out each day in the afternoon under the first name and then simultaneously clock in for the rest of her work day under the second name, creating two sets of time records for a single employee. The purpose of the plan was to ensure

that Plaintiff never recorded more than 40 hours of work per week under either of the two names she was using.

22.     Pursuant to Lopez's instructions, Plaintiff utilized the following two names: Rosa Evelia Pachaco Castillo and Rosibel Moran, each with the same home address. Plaintiff also followed Lopez's instructions on clocking in and out. Defendants thereafter reported two sets of hours to its payroll service (ADP) for Plaintiff (each under name). The payroll service then issued two paychecks (and two sets of payroll records) to Plaintiff each pay period, one under each of the respective names. Through this unlawful scheme, Defendants allocated the hours in such a way that none of Plaintiff's payroll records ever indicated that she was working over 40 hours in a work in a single work week.  In this way, Defendants concealed the fact that Plaintiff was working overtime hours.

23.     From that point on, Plaintiff received two separate pay checks (under two different names). The paychecks were delivered to her directly by Quintanila, who was aware that she was being paid in this way and aware that she received two different paychecks.

24.     On or about Monday, February 1, 2021, Plaintiff was not feeling well while at work (she had a fever). Plaintiff's husband had already tested positive for COVID-19. Plaintiff believed that she also had COVID-19. As a result, approximately two hours after arriving at work, she informed a co-worker of that she believed she had COVID-19 and that she was going to leave work for the day. At approximately 9:00 a.m., Plaintiff immediately went a public health center and was tested for COVID-19 that day. A nurse at the health center informed her that she had symptoms of COVID-19 and should quarantine. The next day, February 2, 2021, Plaintiff spoke with Lopez and notified her that she was directed by a health care provider to quarantine (until she received negative test results) because she had symptoms of COVID-19. Lopez then told Plaintiff that that she should

take leave and let her know the test results. The following day, February 3, 2021, Plaintiff received positive test results for COVID-19 and she informed Lopez of this. Lopez replied that Plaintiff could not come to work until February 15, 2021. At the same time that Plaintiff began suffering symptoms, Plaintiff's two young children (the 8 and 9 years old) also exhibited COVID-19 symptoms and they all quarantined together. Plaintiff took care of the two children while they were ill. Plaintiff returned to work on Monday, February 15, 2021. When Plaintiff returned to work, she asked Lopez if she would received pay for the time she was out sick with COVID-19.  Lopez replied that she would not.

25.     In addition, at the time Plaintiff was terminated, she had accrued but unused Paid Time Off ("PTO") which had accumulated. Defendants never paid Plaintiff for her accrued but unused PTO.

## COUNT I
## VIOLATIONS OF THE FLSA
### 29 U.S.C. §§ 201 – 216 (b)

26.     Plaintiff repeats and incorporates by reference all allegations of fact set forth above.

27.     At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of the FLSA.

28.     At all times relevant to this Complaint, Plaintiff was an "employee" of the Defendants within the meaning of the FLSA.

29.     Defendants violated the FLSA by knowingly failing to pay Plaintiff one and one-half times his regular hourly rate for each hour over 40 that he worked and failed to pay Plaintiff anything at all for many of her work hours.

30.     Defendants' actions were not undertaken in good faith.

31.     Plaintiff is not able to calculate her damages because she is not in possession of her time records or the vast majority of her payroll records.

32.     Defendants are liable to Plaintiff under 29 U.S.C. § 216 (b), for unpaid, and illegally withheld straight time, overtime time and minimum wages, an additional equal amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.

**COUNT II**
**VIOLATIONS OF THE FFCRA**

33.     Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

32.     Plaintiff was an eligible employee within the meaning of the FFCRA because she was employed by FFCRA for more than 30 calendar days, when she became eligible for FFCRA paid sick leave.

33.     The Mezeh-St. Mary's is a covered employer under the FFCRA (29 U.S.C. §§ 2611 (4)(a)(i) and 2620 (A)(1)(b)) because, at all relevant times, as part of the Mezeh Enterprise, it was engaged in commerce and it had less than 500 employees. As part of the Mezeh Enterprise, Mezeh St. Mary's engaged in commerce within the meaning of § 2611(4)(A)(i) because it had employees, who singularly or collectively, on a routine basis throughout their work day who, sent and received emails, texts or other electronic communications to and from persons who were located outside of the State of Maryland, they had landline or cellular telephone calls or virtual communication with persons or entities that were located outside of the State of Maryland and/or they sent or received written communications or parcels sent through the United States Mail or by private mail carrier to or from persons that were located outside the State of Maryland.

34.     CBCF violated the FFCRA in the manner described above in above. That violation is considered a failure to pay minimum wages under the Fair Labor Standards Act, 29 U.S.C. § 206, and is subject to the penalties set forth in 29 U.S.C. § 216.

35.     CBCF is liable to Plaintiff under the FFCRA, for her for underpayment of FFCRA benefits, plus an additional equal amount as liquidated damages, court costs and reasonable attorneys' fees.

36.     As a result, Defendants are liable to Plaintiff for her unpaid FFCRA benefits of $1,040, an equal amount in liquidated damages and reasonable attorney's fees and litigation costs.

**COUNT III**
**VIOLATIONS OF THE MWHL**
**Md. Code Ann., Lab. & Empl. § 3-420**

37.     Plaintiff repeats and incorporates by reference all allegations of fact set forth above.

38.     At all times relevant to this Complaint, Defendants were "employers" of the Plaintiff within the meaning of the MWHL.

39.     At all times relevant to this Complaint, Plaintiff was an "employee" of the Defendants within the meaning of the MWHL.

40.     Defendants violated the MWHL by failing to pay Plaintiff at one and one-half times his regular hourly rate for each hour over 40 that he worked and failing to pay Plaintiff anything at all for some of her hours of work.

41.     Defendants did not act in good faith, entitling Plaintiff to liquidated damages.

42.     Plaintiff is not able to calculate her damages because she is not in possession of her time records or the vast majority of her payroll records.

43.     As a result, Defendants are liable to Plaintiff pursuant to the MWHL for her unpaid and illegally withheld straight time and overtime wages for the statutory period, an additional equal

amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.

**COUNT IV**
**VIOLATIONS OF THE MWPCL**
**Md. Code Ann., Lab. & Empl. §§ 3-501 – 3-509**

44.     Plaintiff repeats and incorporates by reference all allegations set forth above.

45.     Defendants knowingly, willfully and intentionally violated Plaintiff's rights, under the MWPCL by failing to pay Plaintiff all of her overtime wages under the MWHL, failing to pay her anything at all for some hours of work and failing to pay the balance of her accrued but unused PTO at the time her employment ended.

46.     Defendants' unlawful failure or refusal to pay the required wages was not the result of a *bona fide* dispute within the meaning of the MWPCL.

47.     Plaintiff is not able to calculate her damages because she is not in possession of her time records or the vast majority of her payroll records.

48.     Defendants are liable to Plaintiff pursuant to the MWPCL for the aforementioned wages, an additional amount equal to double the unpaid overtime wages as liquidated damages, litigation costs, attorneys' fees, and any other relief deemed appropriate by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant him the following relief:

a)     enter a judgment against Defendants, jointly and severally, and in favor of the Plaintiff in the amount of Plaintiff's unpaid and illegally withheld overtime and minimum wages, plus an equivalent amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b)      enter judgment against the Defendants, jointly and severally, and in favor of Plaintiff under for her FFCRA benefits, plus an additional amount equal to the amount of the FFCRA benefits, as liquidated damages;

c)      enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff, based on Defendants' violations of the MWHL in the amount of Plaintiff's unpaid and illegally withheld overtime and an equal sum as liquidated damages;

d)      enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff, based on Defendants' violations of the MWPCL in the amount of Plaintiff's unpaid and illegally withheld overtime wages, straight time wages withheld, and the value of Plaintiff's accrued but unused PTO along with a sum equal to double liquidated damages under the MWPCL; and

e)      award Plaintiff his costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216 (b) and Md. Code Ann., Labor & Empl. §§ 3-427 (a) and 3-507.2.

Respectfully submitted,

/s/Omar Vincent Melehy
Omar Vincent Melehy, MD Bar No.: 05712
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Tel: (301) 587-6364
Fax: (301) 587-6308
Email: ovmelehy@melehylaw.com
*Attorneys for Plaintiff*